## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Jason Steele, individually and on behalf of others similarly situated,<br><br>               Plaintiff,<br><br>vs.<br><br>Southwest Airlines, Co.,<br><br>               Defendant. | Case No.:   1:21-cv-1176<br><br>**CLASS ACTION COMPLAINT**<br><br>**1.   Breach of Contract**<br><br>**DEMAND FOR JURY** |

### PRELIMINARY STATEMENT

1.    According to the Southwest Airlines ("Southwest") website, "[t]he Transportation Security Administration (TSA), a division of the Department of Transportation, has mandated that all U.S. airlines add a security fee to all tickets sold on or after October 1, 2003. This government-imposed fee, called the 'September 11th Security Fee,' will be used to pay the government's costs for providing Federal civil aviation security services."[1]

2.    Plaintiff brings this class action to obtain refunds of improperly withheld September 11th Security Fees ("TSA Fee") for passengers who either cancelled their reservations with Southwest prior to travel or otherwise did not travel.

### PARTIES

3.    Plaintiff Jason Steele is a United States citizen residing in Colorado.

---

[1] https://www.southwest.com/html/customer-service/purchasing-and-refunds/gsf-pol.html

4.      In February 2020, Plaintiff used the Southwest Airlines web site, southwest.com, to purchase an airline ticket. Plaintiff paid $536.98 for the ticket, which included airfare, all taxes, and a TSA fee.

5.      Defendant Southwest is one of the largest airlines in the United States.  Southwest is a Texas corporation headquartered in Dallas, Texas.

## VENUE AND JURISDICTION

6.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount of controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of a state different from Southwest.

7.      This Court has personal jurisdiction over Southwest because Southwest does continuous business in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District, Plaintiff purchased his ticket in this District, and Southwest does continuous business in this District. In at least one other action, Southwest has sought to deprive its passengers from bringing an action in a federal District Court by moving to compel arbitration. But the Department of Transportation specifically provides for venue in this Court:

> "No carrier may impose any contract of carriage provision containing a choice-of-forum clause that attempts to preclude a passenger, or a person who purchases a ticket for air transportation on behalf of a passenger, from bringing a claim against a carrier in any court of competent jurisdiction, including a court within the jurisdiction of that passenger's residence in the United States (provided that the carrier does business within that jurisdiction)." 14 CFR 253.10.

**FACTUAL ALLEGATIONS**

9.      On February 7, 2020, Plaintiff Jason Steele purchased a ticket to fly on Southwest Airlines.  He paid $536.98, an amount that included airfare, all taxes, and a TSA fee.  Due to the COVID-19 pandemic and other circumstances, Mr. Steele was unable to travel as booked and he cancelled the ticket.

10.      When Plaintiff clicked on the "Cancel Air Reservation" section of Southwest.com, the website showed his itinerary, explained Southwest's cancellation rules and procedures, and prompted him to "Please select what you would like to do with the balance of these funds": "Nonrefundable" – "These funds will be held for future use."  Believing Southwest's representation that his entire payment was "nonrefundable," Plaintiff accepted a ""Travel Funds"" credit for the entire amount of his prepayment ($536.98).

11.      Plaintiff is unable to use the full ""Travel Funds"" credit and part of his ""Travel Funds"" will expire on May 8, 2021.

12.      Contrary to Southwest's statement, the TSA fee is indeed refundable, and Southwest has itself promised to refund that fee as required by law.  The subsequent sections explain these obligations.

**Southwest's Contract of Carriage promise to refund a TSA fee
to a passenger when required by governing regulation**

13.      The Southwest Airlines <u>Contract of Carriage</u> states in provision 4.c.(3)(i):

> Taxes, security fees, and Passenger Facility Charges associated with a nonrefundable fare are also not eligible for refund except as required by applicable regulations.

14.    This provision is no great victory for passengers—it obliges Southwest only to

refund those fees for which governing regulations already require a refund.  But that is

exactly the situation for the TSA fees that Plaintiff prepaid.

### Governing regulation requires Southwest to refund a TSA fee to a passenger when the passenger cancels travel

15.    Indeed, governing law requires refunds.  *See* 49 CFR § 1510.9(b) (emphasis added):

> Any changes by the passenger to the itinerary are subject to
> additional collection or refund of the security service fee ... as
> appropriate.

Plaintiff canceled his itinerary by cancelling it in full.  This entirely obviates the basis for

the security fee, per the calculation in 49 CFR § 1510.5(a).  As a result, 1510.9(b) obliged

Southwest to refund the fee – not to convert it into a ""Travel Funds"" credit for

Plaintiff's possible future use, but to return it to the Plaintiff

16.    Secondary authorities confirm the plain meaning of 1510.9(b).  The DHS Office of

Audits in 2006 prepared a Review of the Transportation Security Administration Collection

of Aviation Security Service Fees (DHS OIG-06-35).  At page 9 (PDF page 13), the DHS

report summarizes: "air carriers have no grounds to keep fees of any kind that are owed to

the ticket purchaser or TSA."

17.    The GAO in July 2010 prepared a report entitled Consumers Could Benefit from

Better Information about Airline-Imposed Fees and Refundability of Government-Imposed

Taxes and Fees (GAO-10-785) which again restated passengers' entitlement to TSA fee

refunds when they do not travel.  The GAO summarized: "consumers with unused

nonrefundable tickets with expired or lost value are entitled to a full refund of the

September 11th Security Fee, but few consumers request a refund because airlines are not

required to inform consumers of this."

## DAMAGES

18.    A Southwest "Travel Funds" credit is plainly less useful than a refund to a

passenger's original form of payment.  A "Travel Funds" credit can be used only until it

expires, whereas a refund would yield funds that do not expire.  A "Travel Funds" credit

can only be used for purchases from Southwest, whereas a refund would yield funds that

can be used to buy anything from anyone.  A "Travel Funds" credit can only be used to

purchase airfare for the same person who was to travel on the original itinerary, whereas a

refund would allow purchase of travel for anyone.

## CLASS ALLEGATIONS

19.    Plaintiff re-alleges the foregoing paragraphs of this Complaint as though fully set

forth herein.

20.    In ordinary circumstances, a large number of passengers buy tickets for travel on

Southwest, but then do not travel.  In such circumstances, Southwest systematically fails to

refund their TSA fee to them as required by law.

21.    The COVID-19 pandemic has expanded the set of passengers who do not use their

pre-purchased travel.

22.    **Class definition**.  Plaintiff brings this action as a class action for monetary relief

pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the

following Class: All passengers who booked travel with Southwest and paid Southwest a

TSA Passenger Fee, and who canceled such travel, within the past 4 years.

23.    This action is properly maintained as a class action.  The Class satisfies all of the

requirements of Rule 23 for maintaining a class action.

24.    **Ascertainability**.  The members of the Class (collectively "class members") are

known to Southwest.  Their identities are recorded in Southwest's business records.

Moreover, the Class Definition enables every putative class member to identify himself or

herself as a member of the Class.

25.    **Numerosity**.  The Class is so numerous that joinder of all members is impracticable

and the disposition of their claims in a class action will provide substantial benefits to the

parties and the Court.  Plaintiff believes there are tens of thousands of members of the

Class, who are geographically dispersed throughout the United States.

26.    **Existence and predominance of common questions of law or fact**.  There are

questions of law or fact that are common to the Class, which predominate over questions

affecting any individual class member.

27.    Common questions of law or fact include without limitation:

- Whether a contract was formed at the time when a class member purchased a reservation for travel on Southwest;

- Whether Southwest breached the contract by failing to refund the TSA Fee to the passenger's original form of payment, after class members cancelled their reservations or otherwise did not travel;

28.   **Typicality**.  The claims of Plaintiff are typical of those of the class members, and Defendant has no defenses that are unique to Plaintiff.

29.   **Adequacy of representation**.  Plaintiff will fairly and adequately protect the interests of the class and has no interests adverse or antagonistic to the interests of the other members of the class.  Plaintiff has retained competent counsel who are experienced in the prosecution of consumer class action litigation.

30.   **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein.  A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of time and expense that the prosecution of numerous individual actions would entail.  Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of in this action.  Plaintiff does not anticipate any unusual difficulties in the management of this class action.

## CAUSE OF ACTION: BREACH OF CONTRACT
### (all Class Members)

31.   Plaintiff re-alleges the foregoing paragraphs of this Complaint as though fully set forth herein.

32.   Plaintiff and all other class members entered into valid and enforceable written contracts with Southwest for air transportation.  Each such contract specified that the passenger would be charged a TSA Fee, which would be used to pay the United States

government's cost for providing federal civil aviation security services.  The contract further provided that the TSA fee is refundable. Plaintiff and all members of the Class accepted Southwest's offer and fully performed their obligations under the contract.

33.    Southwest nonetheless refused and failed to refund the TSA fee.  In breach of its contracts with class members, Southwest represented that the TSA Fee was nonrefundable and issued a Southwest "Travel Funds" credit instead of refunding the TSA Fee.

34.    As a direct result of Southwest's breach of the Contract, Plaintiff and all other members of the Class suffered actual damages in the form of being denied their refundable TSA Fees and incurred reasonable and foreseeable economic harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendant as follows:

A.    Certification of Plaintiff's claim as a class action, pursuant to Fed. R. Civ. P. 23(b)(2) & (3), on behalf of the proposed Class;

B.    Actual damages in an amount not less than the full amount of refunds for TSA Fees, in the passenger's original form of payment, owed by Southwest to Plaintiff and the Class;

C.    An order enjoining Defendant from issuing "Travel Funds" credits in lieu of full refunds for TSA Fees in the passenger's original form of payment;

D.    Pre-judgment at the maximum rate of interest permitted by law;

E.    Post-judgment interest at the maximum rate of interest permitted by law; and

F.      Such other and further relief that the court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: April 28, 2021

Respectfully submitted,


_s/ James Stern_____
James Stern
481 S. Monaco Pkwy,
Denver CO 80224-1256
Telephone: (303) 500.5023
E-mail:  jsternesq@gmail.com
Attorney for Plaintiff

_s/ Oren Giskan_____
Oren Giskan
GISKAN SOLOTAROFF & ANDERSON LLP
90 Broad Street, 10th Floor
New York, New York 10004
Telephone: (212) 847-8315
E-Mail: ogiskan@gslawny.com
Attorney for Plaintiff